Boyuan Wang (SBN 326879)
Attorney at Law
boyuan.wang@wustl.edu
880 W Maude Ave, Sunnyvale, CA 94085
Telephone: (314)203-6972
Attorney for Plaintiff
Huzhou Xinju Electronic Commerce Co., Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Huzhou Xinju Electronic Commerce Co., Ltd.,)    Case Number: [To Be Assigned]
                                           )
        Plaintiff,                         )    **COMPLAINT FOR DECLARATORY**
                                           )    **JUDGMENTS OF PATENT NON-**
    v.                                     )    **INFRINGEMENT, PATENT**
                                           )    **INVALIDITY, TORTIOUS**
Semisilicon Technology Corp.,              )    **INTERFERENCE, AND UNFAIR**
                                           )    **COMPETITION**
        Defendant.                         )
                                           )
                                           )
                                           )    JURY TRIAL DEMANDED
                                           )
                                           )
                                           )
                                           )
                                           )
                                           )
_____   )

1.    Huzhou Xinju Electronic Commerce Co., Ltd. ("Xinju" or "Ailofy" or "Plaintiff") seeks declaratory judgments that its Ailofy TV LED Backlight Strips sold under ASIN B0F9F3F4NP (the "accused product") do not directly or indirectly infringe U.S. Patent No. 8,884,546 B2 (the "'546 Patent"), either literally or under the doctrine of equivalents, and that the remaining asserted claims of the '546 Patent, including claims 4-6, are invalid. Plaintiff also seeks injunctive relief, damages, and other appropriate relief arising from Defendant Semisilicon Technology Corp.'s ("Semisilicon" or "Defendant") enforcement of the '546 Patent against

Plaintiff through Amazon, including Semisilicon's Amazon patent complaint and the resulting removal of Plaintiff's Amazon listing without prior seller-side notice to Plaintiff.

**NATURE OF THE ACTION**

2.      This is an action for declaratory judgments of patent non-infringement and invalidity arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

3.      This is also an action for damages, restitution, injunctive relief, and other relief arising from Semisilicon's tortious interference with Plaintiff's business relationships and unfair competition in violation of California Business and Professions Code § 17200.

4.      Unless otherwise indicated, references in this Complaint to the "Boyuan Wang Declaration" or "Wang Decl." refer to the Declaration of Boyuan Wang Regarding Exhibits and Notice filed concurrently with Plaintiff's Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction. References to the "Chaoda Wang Declaration" refer to the Declaration of Electronics Engineer Chaoda Wang regarding patent invalidity and non-infringement. References to the "Jiao Declaration" refer to the Declaration of Marketing Representative Ziqi Jiao regarding irreparable harm and urgency. References to the "Biao Ma Declaration" refer to the Declaration of Biao Ma regarding the English translation of CN201307949Y.

**PARTIES**

5.      Huzhou Xinju Electronic Commerce Co., Ltd. is a corporation organized and existing under the laws of China, with a principal place of business at Room 2030, 14th Building, Zhengbei Commercial Square, No. 88, Xingfu Road, Longshan Street, Changxing, Huzhou, China.

6.      Upon information and belief, Semisilicon is a corporation organized and existing under the laws of Taiwan with its principal place of business at 8F-2, No. 504, Yuanshan Rd., Zhonghe Dist., New Taipei City 235, Taiwan.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, 1367(a), and 2201(a).

8. The Court has subject matter jurisdiction over Plaintiff's declaratory-judgment claims under 28 U.S.C. §§ 1331 and 1338(a) because those claims arise under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the patent laws of the United States, 35 U.S.C. § 1 et seq.

9. The Court has supplemental jurisdiction over Plaintiff's tortious-interference and unfair-competition claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy and derive from a common nucleus of operative fact as Plaintiff's declaratory-judgment claims.

10. Venue is proper in this District under 28 U.S.C. § 1391(c)(3) because Semisilicon is not a resident of the United States and therefore may be sued in any judicial district. Venue is also appropriate because Semisilicon directed patent-enforcement activity toward United States commerce, including Amazon listings offered for sale nationwide and to customers in this District.

11. This Court has specific personal jurisdiction over Semisilicon. Semisilicon purposefully directed patent-enforcement activity toward the United States and this District by invoking Amazon's patent-enforcement mechanisms against Huzhou Xinju's Amazon listing, which was offered for sale nationwide, including to customers in California and this District. Those enforcement acts caused removal of Huzhou Xinju's listing from Amazon.com and caused injury to Huzhou Xinju's United States sales, including sales and business opportunities in this District. Under *SnapPower v. Lighting Defense Group*, 100 F.4th 1371, 1374-75 (Fed. Cir. 2024), initiating Amazon's patent-enforcement process is materially different from merely sending a cease-and-desist letter because the Amazon process can trigger platform-driven removal of accused listings.

12. Semisilicon has also previously invoked this forum by filing LED-related patent litigation in the Northern District of California. *See Semisilicon Technology Corp. v. Changzhou*

*Jutai Electronic Co.*, No. 4:25-cv-02665-JST (N.D. Cal.). That prior enforcement activity further confirms that Semisilicon has purposefully availed itself of this District and that it is fair and foreseeable for Semisilicon to litigate disputes over its United States patent-enforcement activities here.

13.    In the alternative, if Semisilicon contends that no individual state court may exercise personal jurisdiction over it, this Court has personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Plaintiff's declaratory-judgment claims arise under federal patent law, Semisilicon is a foreign defendant, and Semisilicon has purposefully directed patent-enforcement activity toward the United States as a whole by asserting a United States patent through Amazon's U.S. marketplace and disrupting nationwide U.S. sales of the accused product.

**Statement of Facts**

**A.    Background of Huzhou Xinju and Huzhou Xinju's accused product**

14.    Huzhou Xinju Electronic Commerce Co., Ltd. is a technology company established in 2022. Its business focuses on smart-home products, Internet of Things platform technology, and related AI-enabled smart-home solutions.

15.    The accused product is one of Plaintiff's flagship products. It is designed and marketed as a television LED backlight strip. It includes a camera that captures colors from a television screen so that the LED backlight can change color in response to the television image. The accused product is a TV LED backlight strip and is not a curtain lamp.

**B.    The '546 Patent and IPR 2024-00156**

16.    The '546 Patent is titled "Driving Apparatus for Light-Emitting Diode Curtain Lamp". It issued on November 11, 2014 from U.S. Patent Application No. 13/232,932 and claims priority to Taiwan Application No. 99220340U, filed October 21, 2010. *See* Wang Decl. Ex. A.

17.    The '546 Patent contains eight claims. Claims 1, 4, and 8 are independent claims. In IPR2024-00156, claims 1-6 and 8 were challenged by Xu Peicheng (Hong Kong) Optoelectronic Technology Co., Limited. *See* Wang Decl. Ex. B. The Patent Trial and Appeal

Board ("Board") found claims 1-3 and 8 unpatentable. Claim 4 is the only independent claim challenged in that IPR that was not found unpatentable, and claims 5 and 6 depend from claim 4. *Id*.

18. Claim 4 recites:

> A driving apparatus for light-emitting diode curtain lamp applied to an alternating current power source and at least a light-emitting diode light string, the driving apparatus for light-emitting diode curtain lamp including:
> a master control unit including a power negative terminal pin of master control unit and a signal output pin of master control unit, the master control unit being electrically connected to the alternating current power source; and
> at least a slave control unit including a signal input pin of slave control unit, a signal output pin of slave control unit, a power positive terminal pin of slave control unit, and a power negative terminal pin of slave control unit, the slave control unit being electrically connected to the master control unit and the light-emitting diode light string,
> wherein the slave control unit is controlled by the master control unit to drive the light-emitting diode light string; the signal output pin of master control unit is electrically connected to the signal input pin of slave control unit; the power negative terminal pin of master control unit is electrically connected to the power positive terminal pin of slave control unit.

19. During IPR2024-00156, claim 4 was challenged based on JP2006-228529 to Hiroyuki, published on August 31, 2006. The Board recognized that the operative issue was whether Hiroyuki teaches the "pins" recited in claim 4. Wang Decl. Ex. B at 65-69.

20. Semisilicon argued in the IPR that Hiroyuki's "terminals" and "terminal units" were not disclosed as "pins." Semisilicon relied on definitions under which a "pin" is a "slender, straight, stiff prong used as a terminal" or a "slender prong", and argued that the words "terminal" and "pin" in claim 4 must be afforded different meanings. Wang Decl. Ex. B at 67-69.

21. The Board found the distinction persuasive. It found that a "terminal pin" is different from a "terminal" alone and that Hiroyuki did not disclose that its "terminals" or "terminal units" were pointed terminals. Wang Decl. Ex. B at 69. The Board therefore concluded that the petitioner had not shown claim 4 unpatentable over Hiroyuki. *Id*.

### C.    Amazon Patent Express Evaluation Program

22.    Amazon has established intellectual-property complaint and enforcement systems for Amazon.com. These systems include a patent-infringement reporting procedure and an abbreviated evaluation process known as Amazon Patent Evaluation Express or APEX.

23.    Once an APEX complaint is filed with respect to a particular ASIN, Amazon's described APEX procedure ordinarily calls for Amazon to contact the reported seller, inform the seller of the patent-infringement claim, and give the seller an opportunity to participate in the evaluation process or resolve the matter directly with the patent owner. *See* Wang Decl. Exs. G-H.

### D.    Semisilicon's Amazon Complaint, Amazon's APEX Notice Irregularity, and Semisilicon's Later Texas Filing

24.    In 2026, Semisilicon submitted an Amazon patent complaint against Huzhou Xinju's Amazon listing for ASIN B0F9F3F4NP, identified by Amazon as Complaint ID 20300993071 and based on the '546 Patent. Amazon removed the listing and stated that the listing could be reactivated only if Huzhou Xinju submitted a court order stating that it is allowed to sell the product and is not violating Amazon policy, or if the rights owner submitted a retraction directly to Amazon. *See* Jiao Decl. Ex. A.

**25.**    Unlike Amazon's described APEX procedure, Amazon did not provide Huzhou Xinju with any seller-side APEX notice, claim notice, invitation, notification, or election opportunity for Complaint ID 20300993071 on ASIN B0F9F3F4NP before removing the listing. Amazon's subsequent communications explained that, when APEX is used against a seller's listing, Amazon contacts the reported seller, informs the seller of the patent-infringement claim, and gives the seller the option to participate in the evaluation process. *See* Wang Decl. Exs. G-H. **The removal of Huzhou Xinju's listing without such seller-side notice or election opportunity was inconsistent with Amazon's described APEX process.**

26.    After the listing was removed, Huzhou Xinju communicated with Amazon and Semisilicon in an effort to preserve evidence, confirm what procedure had been used, and resolve

the removal without emergency court intervention. Those communications did not resolve the problem. Amazon's communications confirmed that court relief or a rights-owner retraction was a practical path to reactivation, and Semisilicon did not withdraw or retract its Amazon patent complaint.

27. On July 13, 2026, Huzhou Xinju, through counsel, provided Semisilicon with notice of Huzhou Xinju's intended Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction in the Northern District of California. *See* Wang Decl. Ex. E. The July 13 notice transmitted Huzhou Xinju's TRO/PI motion package to Semisilicon for purposes of documenting notice efforts consistent with Federal Rule of Civil Procedure 65 and Civil Local Rule 65-1 of the Northern District of California.

28. On July 14, 2026, Huzhou Xinju provided Semisilicon with supplemental updated TRO/PI materials clarifying certain technical and evidentiary points. *See* Wang Decl. Ex. F. Semisilicon therefore had actual notice no later than July 13, 2026 that Huzhou Xinju intended to seek emergency relief in the Northern District of California concerning Semisilicon's patent complaint, Amazon's removal of Huzhou Xinju's listing, and the '546 Patent.

29. Between July 14 and July 31, 2026, Huzhou Xinju continued to communicate with Amazon to confirm and preserve the relevant evidence, including why Amazon had removed ASIN B0F9F3F4NP without providing Huzhou Xinju with any seller-side APEX notice, invitation, notification, or election opportunity. *See* Wang Decl. Exs. G-H. Huzhou Xinju sought that information so that its anticipated court filings could accurately describe Amazon's process and the absence of seller-side notice. Amazon's responses were slow, and several responses appeared automated or did not address the specific questions asked. As a result, Huzhou Xinju spent additional time following up with Amazon and confirming the evidentiary record before finalizing its anticipated filing.

30. On July 31, 2026, while Huzhou Xinju was still communicating with Amazon and Semisilicon regarding the takedown and before Huzhou Xinju completed filing its anticipated Northern District of California action, Semisilicon filed an action against Huzhou Xinju in the United States District Court for the Eastern District of Texas involving the same asserted patent

and the same Amazon enforcement dispute, including ASIN B0F9F3F4NP. Huzhou Xinju contends that Semisilicon's Texas filing, made after receiving notice of Huzhou Xinju's intended Northern District of California TRO/PI motion and lawsuit, raises serious issues of anticipatory filing, forum shopping, and procedural gamesmanship. Huzhou Xinju reserves all rights to seek appropriate relief, including transfer, stay, dismissal, or other coordination as appropriate.

## COUNT I

(Declaratory Judgment of Non-Infringement of Claim 4-6 of the '546 Patent)

31. Plaintiff restates and incorporates by reference the allegations in the paragraphs above as if set forth fully herein.

32. On information and belief, Semisilicon claims to own all right, title, and interest in the '546 Patent, including the right to enforce the '546 Patent.

33. Semisilicon has alleged that Plaintiff's accused product infringes at least claim 4 of the '546 Patent.

34. Plaintiff's accused LED backlight product does not directly or indirectly infringe claim 4 of the '546 Patent, either literally or under the doctrine of equivalents, at least because the accused product is a television backlight LED light strip, not a light-emitting diode curtain lamp, and because the accused product lacks the claimed terminal pins when that term is construed consistently with Semisilicon's IPR positions and the Board's Final Written Decision.

35. The accused product is designed and marketed as a television backlight system. It uses a camera to capture colors from a television screen and changes the color of the LED backlight accordingly. It is not a curtain lamp and is not used as a curtain lamp. Semisilicon's infringement theory therefore depends on an overbroad reading of 'light-emitting diode curtain lamp' that ignores the claim language and the title, specification, and context of the '546 Patent.

36. The "curtain lamp" limitation is not a mere intended-use label. In the IPR, the parties and the Board treated the preamble as limiting and entitled to patentable weight. The remaining asserted claims therefore require a driving apparatus for a light-emitting diode curtain lamp, not simply any LED product that happens to include controllable LEDs.

37.     The ordinary meaning of "curtain" refers to material, typically cloth, that hangs across a window or opening for privacy, shade, or decoration. A "curtain lamp", in ordinary usage and in the context of the '546 Patent, is a lamp used on, with, or in a curtain-style hanging lighting arrangement. That understanding is consistent with the patent's title and specification, which repeatedly describe a driving apparatus for a light-emitting diode curtain lamp and light-emitting diode light strings.

38.     The accused Ailofy product is materially different. It is designed, marketed, and used as a smart television backlight. Its camera is integrated with the master control unit and captures colors from a television screen so the LED strip can provide ambient backlighting for television viewing. The product is not designed, marketed, arranged, or used as a curtain lamp or a curtain-style hanging light.

39.     Semisilicon has not identified any intrinsic definition that expands "curtain lamp" to cover television backlight systems. Treating a TV backlight as a "curtain lamp" would detach the claim from the limiting preamble that preserved the scope of the remaining claims and would improperly convert a specific curtain-lamp driving apparatus into a claim over LED lighting products generally.

40.     Semisilicon's infringement theory also depends on an overbroad reading of "pin". In IPR2024-00156, Semisilicon distinguished claim 4 from Hiroyuki by arguing that Hiroyuki's "terminals" and "terminal units" were not "pins". Semisilicon relied on definitions of "pin" as a "slender, straight, stiff prong used as a terminal" and a "slender prong", and argued that the words "terminal" and "pin" in claim 4 must be afforded different meanings. Wang Decl. Ex. B at 67-69.

41.     The Board accepted that distinction. The Board found that a "terminal pin" is different from a "terminal" alone and that Hiroyuki did not disclose that its "terminals" or "terminal units" were pointed terminals. Semisilicon cannot now broaden "pin" to cover any ordinary electrical endpoint, pad, solder joint, wire end, or IC connection in the accused Ailofy product.

42. Semisilicon's current infringement analysis appears to map ordinary data and power connections, including DI, DO, and power terminals, to the claimed "terminal pins". *See* Wang Decl. Exs. C-D. That theory contradicts the narrower "pin" position by which Semisilicon preserved claim 4 in the IPR. If every electrical endpoint were a claimed "pin", then the Board would not have found Hiroyuki deficient on the very "pin" limitation that preserved claim 4.

43. Accordingly, Plaintiff's accused LED backlight products do not literally satisfy claim 4. Nor can Semisilicon rely on the doctrine of equivalents to recapture subject matter it distinguished during the IPR or to erase the difference between a generic electrical terminal and a claimed terminal pin.

44. Claims 5 and 6 depend from claim 4. Because Plaintiff's accused product does not infringe claim 4, it also does not infringe dependent claims 5 and 6.

45. A substantial, immediate, real, and justiciable controversy exists between Plaintiff and Semisilicon regarding whether Plaintiff infringes the '546 Patent by making, using, selling, offering for sale, and/or importing Ailofy LED backlight products in the United States. A judicial declaration is necessary to determine the parties' rights regarding the '546 Patent.

46. Plaintiff seeks a judgment declaring that Plaintiff does not infringe, either literally or under the doctrine of equivalents, any remaining asserted claim of the '546 Patent, including claims 4-6, directly under 35 U.S.C. § 271(a) or indirectly under 35 U.S.C. §§ 271(b) and (c).

### COUNT II

(Declaratory Judgment of Invalidity of Claims 4-6 of the '546 Patent)

47. Plaintiff restates and incorporates by reference the allegations in the paragraphs above as if set forth fully herein.

48. A substantial, immediate, real, and justiciable controversy exists between Ailofy and Semisilicon regarding the validity of the remaining asserted claims of the '546 Patent, including claims 4-6.

49. Claim 4 is invalid under at least 35 U.S.C. §§ 102 and/or 103 in view of the prior art, including CN201307949Y, titled "Single-wire serial transmission driver chip and application circuit", alone and/or in combination with Hiroyuki as discussed in the Board's Final Written

Decision. CN201307949Y was filed on October 22, 2008 and published on September 9, 2009, before the October 21, 2010 priority date asserted for the '546 Patent. *See* Biao Ma Decl. Exs. A-B; Chaoda Wang Decl.

50.　　The Board did not hold claim 4 valid over all prior art. Rather, the Board found that the IPR petitioner had not shown that Hiroyuki's generic "terminals" and "terminal units" disclosed the claimed "pins". The Board identified the operative issue as whether Hiroyuki teaches the "pins" recited in claim 4. Wang Decl. Ex. B at 65-69.

51.　　CN201307949Y supplies the precise teaching the Board found missing from Hiroyuki. CN201307949Y discloses an SOP8-packaged LED single-wire serial transmission driver chip whose package leads out eight pins. Those pins include a power input terminal, a cascade input terminal for receiving cascade serial signals, a ground terminal, drive output terminals, and a cascade output terminal for transmitting cascade serial signals to the following-stage chip. *See* Biao Ma Decl. Ex. B; Chaoda Wang Decl.

52.　　Semisilicon's post-IPR infringement position gives "pin" a breadth that cannot be reconciled with its IPR position. In its infringement theory, Semisilicon identifies the claw portions or soft bent ends of a similar Ailofy control unit as the claimed "pins". *See* Wang Decl. Exs. C-D. Under that broad reading, "pin" is no longer limited to the narrower physical structure Semisilicon relied on in the IPR, but instead covers the same class of physical package leads, claw-like conductive ends, and data/power connection structures used in ordinary LED driver circuitry.

53.　　CN201307949Y discloses the same type of structure for purposes of the invalidity analysis. It teaches an LED single-wire serial driver chip packaged in SOP8 form, with the package leading out eight pins, including pins for power input, cascade signal input, ground, drive outputs, and cascade signal output. If the claw portions or conductive ends identified by Semisilicon in the Ailofy product are "pins", then the SOP8 package leads and corresponding input/output/power/ground pins disclosed in CN201307949Y are also "pins" under the same broad construction.

54.    Unlike Hiroyuki's generic "terminal units", CN201307949Y discloses physical IC package pins/leads. A person of ordinary skill in the art would understand SOP8 package pins/leads to be physical conductive leads extending from an integrated-circuit package for soldering and electrical connection, i.e., the type of physical pin structure that Semisilicon and the Board distinguished from a generic terminal in the IPR.

55.    A person of ordinary skill in the art would have been motivated to use known packaged LED serial driver chips, such as the SOP8 chip disclosed in CN201307949Y, in Hiroyuki's master/slave LED lighting architecture to reduce package and PCB size, simplify wiring, and enable predictable cascaded LED control. The combination would have yielded no more than the predictable use of known LED driver-chip pin structures in a known master/slave LED lighting system.

56.    CN201307949Y and the '546 Patent are in the same technical field. Both concern LED lighting control and driving apparatuses in which a control architecture supplies signals and power to LED light strings, lamp points, or lighting units so that multiple LEDs can be controlled in a coordinated and dynamic manner. Both address the practical implementation of LED lighting systems using driver/control circuitry, signal transmission, power/ground connections, and cascaded or serially connected LED control units.

57.    The overlap is especially strong for claim 4. Claim 4 is directed to a driving apparatus for an LED curtain lamp applied to an AC power source and at least one LED light string, with a master control unit and at least one slave control unit connected through signal and power terminal pins. CN201307949Y is directed to an LED lamp single-wire serial transmission driver chip and application circuit, where control signals are transmitted from a controller through cascaded driver chips, each chip performs data input and output, generates display/drive control signals, and uses physical package pins for power, ground, cascade input, cascade output, and LED drive outputs.

58.    A person of ordinary skill would therefore have looked to CN201307949Y when implementing or improving the master/slave LED driving architecture of Hiroyuki and the claimed subject matter of the '546 Patent. The references solve closely related LED-control

implementation problems: reducing wiring, reducing PCB and lamp size, providing predictable serial/cascade control of multiple LEDs, and packaging the necessary signal and power connections in a compact driver-chip form.

59.    The motivation to combine is straightforward. Hiroyuki already discloses a master/slave LED lighting architecture and terminal units for connecting the master drive unit to slave drive units. The Board found only that Hiroyuki did not sufficiently disclose that those generic terminal units were physical "pins". CN201307949Y supplies a known, compact, off-the-shelf implementation of physical LED driver-chip pins for cascade input, cascade output, power, ground, and LED drive outputs. Substituting or implementing Hiroyuki's generic terminal units with the SOP8 physical pin structure taught by CN201307949Y would have been a predictable use of known LED driver technology to perform its known function.

60.    Under Semisilicon's current broad infringement theory, which treats ordinary DI, DO, power, and ground connections as claimed "pins", claim 4 is invalid because those same types of input, output, power, and ground pins were disclosed in the prior art before the '546 Patent. Under the narrower IPR construction that preserved claim 4, the accused Ailofy product does not infringe.

61.    Because claims 5 and 6 depend from claim 4, they are likewise invalid for at least the same reasons and/or because the additional limitations of those claims were known or obvious in view of the prior art.

62.    Plaintiff seeks a judgment declaring that claims 4-6 of the '546 Patent are invalid.

**COUNT III**

(Tortious Interference)

63.    Plaintiff restates and incorporates by reference the allegations in the paragraphs above as if set forth fully herein.

64.    Plaintiff had ongoing business relationships and economic expectancy with Amazon and Amazon customers. Plaintiff listed Ailofy LED backlight products for sale on Amazon.com, consumers purchased Plaintiff's products through Amazon, and Plaintiff reasonably expected those sales relationships to continue.

65. Semisilicon knew or should have known of Plaintiff's relationships with Amazon and Amazon customers because Semisilicon directed its patent complaint to Amazon for the purpose of removing Plaintiff's listing from Amazon.com. *See* Wang Decl. Exs. G-H; Jiao Decl. Ex. A.

66. Upon information and belief, Semisilicon intentionally interfered with Plaintiff's relationships and economic expectancy by asserting to Amazon that Plaintiff's product infringed the '546 Patent and by causing Amazon to remove Plaintiff's listing.

67. Upon information and belief, Semisilicon's infringement assertion to Amazon was objectively baseless, made in bad faith, and/or made with knowledge or reckless disregard of the facts and the intrinsic and IPR record. Semisilicon knew or should have known that Plaintiff's accused TV LED backlight product is not a light-emitting diode curtain lamp and that Semisilicon's broad reading of "pin" is inconsistent with the IPR record and the prior art.

68. As a direct and proximate result of Semisilicon's conduct, Amazon removed Plaintiff's listing from Amazon.com, Plaintiff lost sales, and Plaintiff suffered harm to goodwill, ranking, reviews, marketplace standing, customer trust, and account health in amounts to be proven at trial.

## COUNT IV

(Unfair Competition Violating CAL. BUS. & PROF. CODE § 17200)

69. Plaintiff restates and incorporates by reference the allegations in the paragraphs above as if set forth fully herein.

70. Semisilicon's conduct constitutes unfair, unlawful, and/or fraudulent business practices under California Business and Professions Code § 17200. Semisilicon used Amazon's patent-enforcement process to remove Plaintiff's listing based on infringement positions that are inconsistent with the claim language, the IPR record, and the prior art.

71. Upon information and belief, Semisilicon's conduct was objectively baseless, made in bad faith, and/or made with knowledge or reckless disregard of the facts and law, including the non-infringing nature of Plaintiff's TV LED backlight product and the invalidity issues created by Semisilicon's broad post-IPR interpretation of "pin".

72.    Semisilicon's unfair business practices caused Plaintiff to lose sales, goodwill, reviews, ratings, rankings, marketplace standing, customer trust, and time and resources spent responding to the Amazon removal and attempting to restore its listing and account health.

73.    Plaintiff seeks all relief available under California Business and Professions Code § 17200, including restitution, injunctive relief, and other equitable relief.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests judgment and relief as follows:

A. Declaring that Plaintiff's accused Ailofy TV LED Backlight Strips, including ASIN B0F9F3F4NP, do not directly or indirectly infringe any remaining asserted claim of the '546 Patent, including claims 4-6, either literally or under the doctrine of equivalents;

B. Declaring that claims 4-6 of the '546 Patent are invalid;

C. Preliminarily and permanently enjoining Semisilicon, its officers, directors, employees, agents, and all persons acting in concert or participation with them from asserting infringement of the '546 Patent against Plaintiff's accused product through Amazon or any similar platform-enforcement mechanism absent further order of this Court;

D. Ordering Semisilicon to withdraw or retract its Amazon patent complaint against Plaintiff's accused product, including ASIN B0F9F3F4NP, and to notify Amazon that Semisilicon does not object to restoration of the listing during the pendency of this action, or granting such other Amazon-related relief as the Court deems proper;

E. Awarding Plaintiff damages in an amount to be proven at trial;

F. Awarding restitution, disgorgement, and other equitable relief available under California Business and Professions Code § 17200;

G. Finding this case exceptional under 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees to the extent permitted by law;

H. Awarding Plaintiff its costs, expenses, and pre-judgment and post-judgment interest to the extent permitted by law; and

I. Awarding such further and additional relief as the Court deems just and proper

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Civil Local Rule 3-6, Plaintiff hereby demands a jury trial on all issues so triable.


Dated: August 6, 2026

Respectfully submitted,

/s/ Boyuan Wang

Boyuan Wang

Attorney for Plaintiff Huzhou Xinju Electronic Commerce Co., Ltd.